## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST FROM THE UKRAINE IN THE MATTER OF UKRZALIZNYTSYA | )<br>)<br>)   Misc. No. 07-<br>) |

### GOVERNMENT'S MEMORANDUM OF LAW
### IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from the Ukraine. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Ukrainian authorities who are investigating a case of alleged official corruption, tax evasion, forgery, embezzlement, and money laundering.

EVIDENCE SOUGHT:

The Ukrainian authorities seek information from a company which resides in this District and the Delaware Secretary of State's Office. Thus, the information the Ukrainians seek may be obtainable here. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant

to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in <u>In Re Request for Judicial Assistance from the Seoul District Criminal Court</u>, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." <u>In Re Letter of Request from the Crown Prosecution Services of the United Kingdom</u>, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in the Ukraine and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: /s/ David L. Hall
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE  19801
(302) 573-6277

Dated: 11/13/07

To: Competent Authority
of the United States of America

**Motion for
legal assistance
in criminal case No. 49-1522**

The Office of the Prosecutor General of Ukraine expresses its deepest respect to the Competent Authority of the United Kingdom of Great Britain and Northern Ireland, thanks for legal assistance provided, and based on the 1959 European Convention "On Mutual Legal Assistance in Criminal Cases" concluded, the 1978 Additional Protocol to this Convention and the 1990 Convention "On Laundering, Search, Seizure and Confiscation of the Proceeds Obtained by Illegal Means", has the honor to apply with the motion for providing legal assistance in the criminal caser No 49-1522.

The said criminal case was initiated and is investigated by the Department of Investigation for particularly important cases of the Office of the Prosecutor General of Ukraine concerning facts of abuse of official position and peculation of sate property in especially large amounts by officials of the State Administration of Railroad Transport of Ukraine "Ukrzaliznyca" and state enterprises of railways of Ukraine for the total amount 299 100 000 UAH.

These offenses are qualified pursuant to part 2 of Article 364, part 5 of Article 191, part 2 of Article 205, part 3 of Article 212, part 2, part 3 of Article 358, and part 3 of Article 209 of the Criminal Code of Ukraine set forth in the following edition:

**Article 364. Abuse of power or official position**

1. Abuse of power or official position, i.e. willful, on lucrative impulse or in other personal interests or in interests of third persons, use of power or official position by the official contrary to the interests of the service if it inflicted substantial damage to rights, freedoms, and interests of individuals or State or public interests, or interests of legal entities, protected by law,-

   *shall be punished by corrective labor for up to two years, or arrest for up to six months, or restraint of freedom for up to three years, with deprivation of right to hold certain offices or conduct certain activity for up to three years.*

2. The same act, if it has caused terrible consequences,-

---

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

( підпис перекладача )        Дайнеко І.
                              ( прізвище перекладача )

*shall be punished by deprivation of freedom for five to eight years with deprivation of right to hold certain offices or conduct certain activity for up to three years.*

3. Acts provided in parts one or two of this article, if they were committed by law enforcement officer,-

*shall be punished by deprivation of freedom for five to twelve years with deprivation of right to hold certain offices or conduct certain activity for up to three years and with confiscation of property.*

### Article 191. Misappropriation, peculation of property, or its acquirement by means of abuse of official position

1. Misappropriation or peculation of one's property which was entrusted to person or was under this person's jurisdiction,-

*shall be punished by penalty in amount of to fifty tax-free minimums of incomes of citizens or by corrective labor for up to two years, or restraint of freedom for up to four years, or deprivation of freedom for up to four years with deprivation of right to hold certain offices or conduct certain activity for up to three years or without such.*

2. Misappropriation, peculation, or acquirement of one's property by means of abuse by the official of its official position,-

*shall be punished by restraint of freedom for up to five years, or deprivation of freedom for the same term with deprivation of right to hold certain offices or conduct certain activity for up to three years.*

3. Acts, provided in parts one or two of this article, committed repeatedly or upon previous conspiracy by group of persons,-

*shall be punished by restraint of freedom for three to five years, or deprivation of freedom for three to eight years with deprivation of right to hold certain offices or conduct certain activity for up to three years.*

4. Acts, provided in parts one, two or three of this article, if they were committed in large amounts,-

*shall be punished by deprivation of freedom for five to eight years with deprivation of right to hold certain offices or conduct certain activity for up to three years.*

5. Acts, provided in parts one, two, three or four of this article if they were committed in especially large amounts or by organized group,-

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.

( підпис перекладача )        ( прізвище перекладача )

*shall be punished by deprivation of freedom for seven to twelve years with deprivation of right to hold certain offices or conduct certain activity for up to three years and with confiscation of property.*

### Article 205. False entrepreneurship

1. A false entrepreneurship, that is, the establishing or acquiring subjects of entrepreneurial activity (legal entities) for the purpose of covering illegal activities or engaging in prohibited types of business, -

    *shall be punished by penalty in amount of 300 to 500 tax-free minimums of incomes of citizens, or restraint of freedom for up to three years.*

2. The same acts, if they were repeatedly committed or inflicted great material damage to the State, bank, lending institution, other legal entities or citizens, -

    *shall be punished by deprivation of freedom fro three to five years.*

*Note: Material damage inflicted to individuals shall be considered as great, if it is two hundred times and more as much as a tax-free minimum of incomes of citizens, and the material damage inflicted to the state or legal entities shall be considered as great, if it is one thousand times and more as much as a tax-free minimum of incomes of citizens.*

### Article 212. Evasion of taxes, fees, other compulsory payments

1. Willful evasion of taxes, fees, other compulsory payments which are part of the taxation system established by law, committed by an official of the enterprise, institution or organization irrespective of form of ownership, or by a person conducting entrepreneurial activity without establishing a legal entity, or by any other person obliged to pay the same, if these acts resulted in actual non-receipt of significant amounts of funds by budgets or special state funds, -

    *shall be punished by a penalty in amount of 300 to 500 tax-free minimums of incomes of citizens, or deprivation of the right to occupy certain offices or engage in certain activities for up to 5 years.*

2. The same acts, committed by a group of persons upon their prior conspiracy, or if they resulted in actual non-receipt of large amounts of funds by budgets or special state funds, -

    *shall be punishes by a penalty in amount of 500 to 2,000 tax-free minimums of incomes of citizens, or correctional labor for up to two years, or restraint of liberty for up to five years, with the deprivation of the right to occupy certain offices or engage in certain activities for up to three years.*

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.

( підпис перекладача )     ( прізвище перекладача )

3. Acts, provided for by parts one or two of this article, committed by a person previously convicted of evasion of taxes, fees, other compulsory payments, or if they resulted in actual non-receipt of especially large amounts of funds by budgets or special state funds, -

*shall be punished by imprisonment for five to ten years with the deprivation of the right to occupy certain offices or engage in certain activities for up to three years and with confiscation of property.*

*Note: A significant amount of funds shall mean amounts of taxes, fees and other compulsory payments which are one thousand times and more as much as the tax-free minimum of incomes of citizens as established by law; a large amount of funds shall mean amounts of taxes, fees and other compulsory payments which are three thousand times and more as much as the tax-free minimum of incomes of citizens established by law; an especially large amount shall mean amounts of taxes, fees and other compulsory payments which are five thousand times and more as much as the tax-free minimum of incomes of citizens established by law.*

**Article 358. Forgery of documents, seals, stamps, and forms, their sale or use of forged documents**

1. Forgery of an identification card or other document issued or certified by an enterprise, institution, organization, individual entrepreneur, private notary, auditor or other person authorized to issue or certify such documents and which grants rights or discharges from obligations, for the purpose of using it both by the forger and other person, or sale of such document, as well as making of forged seals, stamps, or forms of enterprises, institutions or organizations irrespective of form of ownership, as well as other official seals, stamps or forms for the same purpose or sale of the same, -

*shall be punished by penalty up to seventy tax-free minimums of incomes of citizens or arrest for up to six months, or restraint of freedom for up to three years.*

2. Acts, provided for by part one of this article, if they are committed repeatedly or by a group of persons upon their prior conspiracy, -

*shall be punishes by restraint of freedom for up to five years, or imprisonment for the same term.*

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.
( підпис перекладача )　　　　　　　　　　　　( прізвище перекладача )

3.  The use of a knowingly forged document, -

*shall be punished by penalty up to fifty tax-free minimums of incomes of citizens, or arrest for up to six months, or restraint of freedom for up two years.*

**Article 209. Legalization (laundering) of proceeds obtained by illegal means**

1.  Conducting a financial transaction or concluding a deal involving funds or other property obtained as the result of a socially dangerous illicit act that had preceded the legalization (laundering) of proceeds, as well as committing other actions for the purpose of concealing or disguising the illegal origin of such funds or other property, or possessing them, titles to such funds or property, sources of their origin, location or movement, as well as acquiring, possessing or using funds or other property obtained as the result of a socially dangerous illicit act that had preceded the legalization (laundering) of proceeds, –

*shall be punished by imprisonment for three to six years, with the deprivation of the right to occupy certain positions or offices or conduct certain activities for up to two years with the confiscation of the funds or other property obtained illegally, and the confiscation of property.*

2.  Acts provided in part one of this article, committed repeatedly or by a group of persons upon prior conspiracy, or in large amounts, –

*shall be punishes by imprisonment for seven to twelve years with the deprivation of the right to occupy certain offices or engage in certain activities for up to three years, and the confiscation of funds or property obtained illegally, and the confiscation of property.*

3.  Actions, provided in parts one or two of this article, if committed by an organized group of persons or in especially large amounts, –

*shall be punished by imprisonment for eight to fifteen years with the deprivation of the right to occupy certain offices or engage in certain activities for up to three years, and the confiscation of funds or property obtained illegally, and the confiscation of property.*

Note: 1.   According to this article, a socially dangerous illicit act which had preceded the legalization (laundering) of proceeds shall be an act for which under the Criminal Code of Ukraine the punishment shall be set forth by imprisonment for three years or more (except for

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

_____          Дайнеко І.
( підпис перекладача )            ( прізвище перекладача )

*acts provided under articles 207 and 212 of the Criminal Code of Ukraine), or which shall be considered as a crime under the criminal law of other state and that is punishable under the Criminal Code of Ukraine, and which resulted in unlawful acquiring of proceeds;*

2. *The legalization (laundering) of proceeds obtained by illegal means shall be considered as committed in large amounts, if the subject of the crime were funds or other property in amount exceeding six thousand tax-free minimums of incomes of citizens.*

3. *The legalization (laundering) of proceeds obtained by illegal means shall be considered as committed in especially large amounts, if the subject of the crime were funds or other property in amount exceeding eighteen thousand tax-free minimums of incomes of citizens.*

### Circumstances of the criminal matter:

The Office of the Prosecutor General of Ukraine investigates the criminal case No49-1522 commenced upon facts of abuse of official position by officials of the State Administration of Railroad Transport of Ukraine "Ukrzaliznyca" and state enterprises of railways of Ukraine, which within 2004, acting on preliminary conspiracy with Tsvetkov A.V., Reydel R.V. and other unidentified persons, appropriated monetary funds of state enterprises by means of transferring the same to settlement accounts of under controlled false businesses.

It was established that on day within January - February 2004, the Minister of Transport and Communication of Ukraine - Director General of State Administration of Railway Transport of Ukraine "Ukrzaliznyca" Kirpa G.M. entered into the crime conspiracy with Director of "Ukrinvoprominvest" Reydel Ruslan Viktorovych, Director of CJSC "Airline Vitair" Tsvetkov Andrij Volodymyrovych and other unidentified persons, creating an organized a criminal group the activity of which was aimed at embezzling monetary funds in South-West, South, Odessa, Lviv, Prydniprovja and Donetsk railways for the total amount of 299 100 000 UAH. The embezzlement was carried out by the way of creating by the management of the SART of Ukraine "Ukrzaliznyca" conditions for abusing by leaders of the said railways their official position and illegal transferring monetary funds under their jurisdiction on the settlement account of the enterprise "Ukrinvoprominvest" under the guise of payment for fire safety conditions evaluation, environmental impact assessment and examination of the labor protection system management on facilities of railways of Ukraine.

On 1-2 March 2004, in pursuance of instructions of Kirpa G.M., next letters were prepared and sent to the railways of Ukraine: No CZP-6/4 of 02.03.2004, signed by

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.
( підпис перекладача )   ( прізвище перекладача )

"Ukrzaliznyca" Acting Deputy Director General Kyselyov V.M., by which the latter obliged directors of Ukrainian railways to arrange auditing the state of labor protection; No CZM-18/494 of 22.03.2004, signed by "Ukrzaliznyca" Deputy Director General Mostovyj M.V., by which the latter obliged directors of railways to estimate the fire safety conditions of premises of production purpose and No CRB-39/52-E of 09.03.2004, signed by Head of the Main Department of Traffic safety and Ecology Zaitsev V.O., by which he proposed to directors of railways to consider the possibility to conduct the ecological audit in accordance with current regulatory legal documents.

In their turn, Tsvetkov A.V., Reydel R.V. upon prior agreement with Kirpa G.M., and other members of the organized criminal group prepared special contractor's agreements between Ukrainian railways and "Ukrinvoprominvest" enterprise for conducting by the latter fire safety state, examining labor protection management system and conducting environmental impact assessment, without a number and date, which were undersigned by Reydel R.V. as Director of "Ukrinvoprominvest" and certified by the seal of this enterprise.

Having prepared in such way the conditions for embezzlement of monetary funds of Ukrainian railways, on one of the days in April 2004 Kirpa G.M., upon the agreement with Tsvetkov A.V. and other members of the organized criminal group, gave to the Deputy Director General of "Ukrzaliznyca" on Economic Issues of Ukraine Goriley S.V. and the Deputy of the latter - Head of the Main Financial-Economic Department of "Ukrzaliznyca" Sokolovska N.S. instruction to inform all Deputies Directors on Economic Issues of railways on his request to conclude the agreements on conducting the above works right by the enterprise "Ukrinvoprominvest", give them prepared by Cvetkov A.V. as a representative of this enterprise contracts for signing, introduce the latter as a person which will represent interests of this enterprise on railways of Ukraine and provide unconditional transferring 100% of advanced payment under these contracts by officials of railways of Ukraine.

Executing G.M. Kirpa's instruction, on one of the days of June 2004 Goriley S.V. and Sokolovska N.S. invited Deputy Directors on Economic Issues of railways of Ukraine and Tsvetkov A.V. to "Ukrzaliznyca", Kyiv, St. Tverska, 5, where the said officials were informed on Kirpa's requirements. In turn, during this informal meeting Tsvetkov A.V. represented to the Deputy Directors on Economic Issues of railways of Ukraine original contractor's agreements between railways of Ukraine and enterprise "Ukrinvoprominvest" for evaluation of fire safety conditions, examination of the labor protection management system and conducting environmental impact assessment.

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.
( підпис перекладача )    ( прізвище перекладача )

Having received aforementioned documents, managers of railways of Ukraine, being frightened of negative consequences for themselves in form of possible resignation from a position in case of non-performance of Kirpa's instruction, abused their official position for the benefit of the latter and concluded with "Ukrinvoprominvest" aforementioned agreements for the total amount of 299 100 000 UAH acting contrary to the interests of the service and violating fixed procedure of concluding agreements.

At the same time upon prior agreement with Tsvetkov A.V and Kirpa G.M., and other unidentified members of the organized criminal group, Reydel R.V. for the purpose of hiding illegal actions aimed at embezzling monetary funds of the railway of Ukraine, for the purpose of creating an imagination that aforementioned agreements are executed between railways and "Ukrinvoprominvest", have executed agreements with the following subcontractors:

- with state enterprise "Kyiv Expert-technical Center of State Labor Protection Supervision of Ukraine" – on conduct of selective external audit of the labor protection on railways for the total amount of 90 000 UAH,
- with "Vinset" LTD – on conduct of organization departments fire safety conditions analyses for the total amount of 90 000 UAH,
- with "Ekotekhservis" LTD – on conduct of environmental impact assessment and performance of preliminary ecological audit on the railways for the total amount of 60 000 UAH.
- As a result of execution of these agreements for the total amount of 240 000 UAH, the enterprise "Ukrinvoprominvest" had received analysis of preparation for execution of work pursuant to agreements between those enterprises and railways of Ukraine for the total amount of 299 100 000 UAH.

As a result of aforementioned agreements execution for the total amount 240 000 UAH, "Ukrinvoprominvest" had received analyses of preparation for execution of work on agreements between those enterprises and railways of Ukraine for the total amount 299 100 000 UAH.

Works, received from subcontractors in value of 240 000 UAH, were provided by Reydel R.V. upon prior agreement with other members of the organized criminal group railways of Ukraine, set them up on the basis of falsified work acceptance and transfer acts for works that were quasi executed by enterprise "Ukrinvoprominvest" according agreements on conduct of fire safety prevention conditions assessment, examine the labor protection system and conduct the environment impact assessment for the total amount of 299 100 000 UAH.

The remaining funds in value of 298 860 000 UAH Reydel R.V., Tsvetkov A.V., Kirpa G.M., and other unidentified members of the organized criminal group have appropriated by

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.
( підпис перекладача )            ( прізвище перекладача )

transferring the same on the basis of fictitious contracts to settlement accounts of controlled by them fictitious businesses registered on the territory of Ukraine, Republic of Latvia and other states.

As part of it, on the territory of Ukraine the funds from the enterprise "Ukrinvoprominvest" account were transferred to the accounts of fictitious businesses, such as: private enterprise "Kolo", private enterprise "Agromashcomplect", private enterprise "Zevs", private enterprise "Ukrtrak", private enterprise "Selgosppostach", private enterprise "Ipokrena", private enterprise "Nasha Myla", private enterprise "Syntez", private enterprise "Energotreidresurs", private enterprise "Komi Tex", private enterprise "Vantel", private enterprise "Fokus-Tsentr", private enterprise "Lugmontazrezerv", private enterprise "Boss".

Later on, funds stolen from the railways of Ukraine on the basis of fictitious foreign trade agreements were transferred to enterprises registered in the United Kingdom of Great Britain and Northern Ireland and the United States of America, whose accounts were opened with bank institutions registered in Republic of Latvia.

So It was establish by the investigation that on 01.04.2004 the private enterprise (PE) "Silgosppostach" executed the commission agreement No 1/KD with the private enterprise "Fokus-Tsentr", according to which the PE "Silgosppostach" committed sui juris and at expense of the PE "Focus Center" to purchase from a foreign business entity the equipment for optical transit ring DWDM SURPASS hiT 7550 3.2 Tbit/s (80*90Gbit/s) in number of 4 pieces at the price 34 923 600 UAH each for total amount of 139 694 400 UAH and same equipment in number of 5 pieces at the price 34 923 600 UAH each for total amount of 174 618 000 UAH.

Later on, the PE "Silgosppostach" concluded with "Toronto Projects Inc." Company registered the following address: 62 Rockford Road, Wilmington, DE 19806 – 1004 USA, the foreign economic sales agreement No 7/КП – 1, according to which and specifications thereto Toronto Projects Inc. quasi sold and the PE "Silgosppostach" quasi bought aforementioned equipment for optical transit ring for total cost of 32 700 00 USD.

In accordance with bills of lading No133/15 of 15.04.2004 and No 1245-2 of 01.06.2004 delivery of good was quasi performed by SJA "TODS" company 40003485192, Riga, Slokas 51, Latvia, ZUB Ridzenes fil 02-000300506. Drivers Ivonchenko D. K. and Dragonenko K.G.

The goods were quasi delivered for storing in accordance with the warehouse storage agreements No7/16-4 and No 6/02 – 2 to the warehouse 010304 of SJA "ROKO" LV – 3405 at the following address Latvia, Liepaya, 8/1, Slyzu str., where they were quasi transferred to the Director of the PE "Silgosppostach" Korotun A. S.

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.

( підпис перекладача )     ( прізвище перекладача )

Later on, from 25.05.2004 to 31.01.2005 the PE "Silgosppostach" transferred to "Toronto Projects Inc." Company 32 700 000 USD on settlement account Acc. ▮▮▮▮▮ JSC Ogres Komercbanka, E.Birznieka Upisa, Riga, LV-1050, Latvia, SWIFT: ▮▮▮▮▮

It was established that that the PE "Silgosppostach" hadn't imported the aforementioned goods on the territory of Ukraine.

Moreover, it was established by the investigation that the private enterprise "Ipokrena" on 31.03.2004 concluded the commission agreement No 31/03/04 with the private enterprise "Lugmontazhrezerv" according to which and specifications thereto the PE "Ipokrena" committed to purchase from a foreign business entity for the PE "Lugmontazhrezerv" an for its account telephone statitons EWSD V. ▮▮▮▮▮ ) with ▮▮▮▮▮ ▮▮▮▮▮ in number of 4 pieces at the price 30 277 800 UAH each for total amount of 121 111 800 UAH and same telephone stations in number of 5 pieces at the price 30 277 800 UAH each for total amount of 151 389 000 UAH.

Subsequently, the PE "Ipokrena" concluded with "Toronto Projects Inc." Company the foreign economic agreement No 1/T according to which and specifications thereto Toronto Projects Inc." sold and the PE "Ipokrena" purchased the aforementioned telephone stations for total cost of 28 350 000 USD.

In accordance with bills of Lading No61 – 1 of 13.02.2004 and No 7/6-4 of 07.06.2004 delivery of good was quasi performed by SJA "TODS" company ▮▮▮▮▮ Riga, Slokas 51, Latvia, ZUB Ridzenes fil ▮▮▮▮▮ drivers Ivonkov A. I. and Malenkiy V. M. The goods were quasi delivered for storing in accordance with the warehouse storage agreement No 2/10 - 4 and No 7/08 – 06 to the warehouse 010304 of SJA "ROKO" LV – 3405 at the following address Latvia, Liepaya, 8/1, Slyzu str., where they were quasi transferred to the Director of the PE "Ipokrena" Martynovu I. V.

Later on, from 25.05.2004 to 31.01.2005 the PE "Ipokrena" transferred to "Toronto Projects Inc." the sum 36 609 267 USD on settlement account Acc. ▮▮▮▮▮, JSC Ogres Komercbanka, E.Birznieka Upisa, Riga, LV-1050, Latvia, SWIFT: ▮▮▮▮▮

It was established that the PE "Ipokrena" hadn't imported the aforementioned goods on the territory of Ukraine.

In such a way Kirpa G. M., Reydel R. V. and Tsvetkov A. V, and other unidentified members of the organized criminal group embezzled funds of railways of Ukraine, by

---

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

_____        Дайнеко І.
( підпис перекладача )            ( прізвище перекладача )

transferring the same to the settlement accounts of aforementioned fictitious businesses controlled by them.

At the current moment, in the criminal case Cvetkov A. V and Rejdel R. V. were accused in committing crimes, provided in part 5 of Article 27 and part 5 of Article 191 of the Criminal Code of Ukraine, i.e. aiding in misappropriation of state funds.

On 01.07.2005 Tsvetkov A. V and ReYdel R. V. were declared for an international search and for them the arrest as a preventive measure was chosen.

The Decision on holding Kirpa G. M. criminally liable was not taken in connection with his death. Other persons relating to committing the above said crimes are being identified.

At the same time, the investigation has data evidencing that the companies registered in the United States of America and have accounts with banks institutions of the Republic of Latvia, namely "TORONTO PROGECTS INC.", "TOLTEX LOMITED CO.", "ARITEL INDUSTRIES LLC" do not conduct the economical activity and their function is envisaged by legalization (laundering) of funds raised in criminal way. The latter is provided by creation of artificial legal regime, connected with imitation of participation of the said companies in virtually not existing public legal relationship.

It was established by the investigation that monetary funds, received in illegal form during 2004 on the territory of Ukraine, were transferred from the settlement accounts of fictitious businesses - residents of Ukraine - to the accounts of aforementioned companies, registered in the United States of America for the purpose of harboring and concealment of the true character and source of their receipt and property rights thereon.

As part of this, in the said way, the revenues comprising of the following sources and obtained in illegal way, were transferred:

- Monetary funds for the total amount of 140 500 000 UAH (26 500 000 USD) transferred from the PE "Fobos-Servis" account to the "Toltex Limited Co." (USA) account in Trasta "Komercbank" (Latvia).

- Monetary funds for the total cost of 147 500 000 UAH (27 830 188 USD) transferred from the small private enterprise "Ista" account to the "Aritel Industries LLC" (USA) account in "Latvian Business Bank" (Latvia).

- Monetary funds for the total cost of 180 900 000 UAH (34 132 075 USD) transferred from the private enterprise "Mashpromcomplect" account to the "Aritel Industries LLC" (USA) account in "Latvian Business Bank" (Latvia).

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.

( підпис перекладача )    ( прізвище перекладача )

- Monetary funds for the total cost of 151 580 000 UAH (28 600 000 USD) transferred from the PE "Ipokrena" account to the "Toronto Projects Inc." (USA) account in "JSK Ogres Comercbanka" (Latvia).
- Monetary funds for the total cost of 312 000 000 UAH (58 900 000 USD) transferred from the PE "Silgosppostach" account to the "Toronto Projects Inc." (USA) account in "JSK Ogres Comercbanka" (Latvia).

Taking into consideration the above said, the fact that the necessity has arisen to conduct in the territory of the United States of America the jurisdiction and function which are in exceptional competence of agencies of this state according to its internal legislation, under authority of the above said Treaty between Ukraine and the United States of 22.07.1998 on mutual assistance in criminal cases, for the purpose of securing full and comprehensive investigation of the criminal case, establishing all circumstances of the crime conducted, the Office of the Prosecutor General of Ukraine addresses to the competent authority of the United States of America with the request to conduct following act within the given criminal case:

1. To establish all owners, founders, representatives, directors and other officials of "Toronto Projects Inc.", "Toldex Limited Co.", "Aritel Industries LLC", who residue or temporary residue on the territory of the United States of America.

To examine them as witnesses complying with procedure, envisaged by legislation of the United States of America in the following matters:
- What activity do they perform in the interests of the company, what is the legal foundation for performing such activity?
- To whom and in connection to what are they accountable in their activity?
- What types of entrepreneurial activity, in what states does their company perform?
- Whom from officials, representatives, administrators of accounts of the company do they know?
- Who are chiefs, owners and founders of the company?
- What do the persons examined know about circumstances of concluding the following agreements:

    a) foreign-economic agreement No 7/КП – 1. signed between "Toronto Projects Inc." and PE "Silgosppostach" on the 22nd of April 2004 for delivery of goods for total cost of 32 700 000 USD.

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко І.
( підпис перекладача )    ( прізвище перекладача )

**b)** foreign-economic agreement No 1/T, signed between "Toronto Projects Inc." and PE "Ipokrena" in 2004 for delivery of goods for total cost of 36 609 267 USD.

- Who participated in negotiation and preparation of the aforementioned agreements, took a fundamental decision on their conclusion, as well as who performed supervision over their performance?
- What was the role in said action of the person being examined?
- Who and on what basis did represent interests of the company in Ukraine?
- Are they familiar with citizens of Ukraine Boyakova Zoya Panteliivna, born on ▬▬ Polishchuk Andriy Oleksandrovych, born on ▬▬ Pylypchuk Victor Petrovych, born in ▬▬, Shkorkin Oleksiy Petrovych, born on ▬▬ and Plotnik Iryna Oleksandrivna, born on ▬▬.
- And if so, under what circumstances did they meet them and what kind of relations do (did) they have with them? Are such relations connected with the activity in interests of the company of the listed persons or the persons being examined? And if so, then - in what way?

We also request your agency to execute other investigatory actions that may become necessary during performing this motion.

Investigation of said criminal case pursues no political goals.

The Office of the Prosecutor General of Ukraine requests to execute actions indicated in this motion as soon as possible in connection with necessity of using documents which are requested for activating the investigation in Ukraine which is not possible without Your assistance.

We express in advance our gratitude for due consideration of this motion and, taking the opportunity, again show our deep respect for the competent authority of the United States of America.

Materials of performed motion please send to the Office of the Prosecutor General of Ukraine at the address: 01011 Ukraine, Kyiv, 13/15 Riznytska street to attach tem to the materials of the criminal case No49-1522 to the senior investigator for especially important

---

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

_Дайнеко І._

( підпис перекладача )   ( прізвище перекладача )

cases of the Office of the prosecutor general of Ukraine Kulik Kostyantin Genadiovych (contact phone number: ▓▓▓▓▓▓▓▓▓▓

The Office of the Prosecutor General of Ukraine guarantees the similar or any other legal assistance in the case of addressing from the competent authorities of the United States of America.

**Appendix:**

Copies of the registration documents of TORONTO PROGECTS INC, on 19 pages.

**Respectfully yours,**

Senior investigator for especially important cases
of the Office of the Prosecutor General of Ukraine
Junior advisor of Justice          (signature)          K. G. Kulik

---

Перекладач попереджений про кримінальну відповідальність за завідомо неправильний переклад згідно зі статтями 384, 385 Карного Кодексу України.

Дайнеко I

( підпис перекладача )          ( прізвище перекладача )

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST )
FROM THE UKRAINE )
IN THE MATTER OF ) Misc No. 07-
UKRZALIZNYTSYA )

ORDER

Upon application of the United States of America; and upon examination of a letter of request from the Ukraine whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in the Ukraine and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Ukrainian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

      3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in the Ukraine, which procedures may be specified in the request or provided by the Ukrainian authorities;

      4. seek such further orders of this Court as may be necessary to execute this request; and

      5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Ukrainian authorities.

      IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2007.

_____
United States District Court Judge